BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch
STUART J. ROBINSON
Senior Counsel (CA Bar No. 267183)
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave., Suite 7-5395
San Francisco, CA 94102
Telephone: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov

*Counsel for Official Capacity Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **Mark Short,**<br><br>                   Plaintiff,<br><br>    – v. –<br><br>**David Berger,** *et al.,*<br><br>             Defendants. | No. CV 22-01151-DMG (AGRx)<br><br>**Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities.**<br><br>Date:  August 26, 2022<br>Time: 9:30 a.m.<br>Place: First Street Courthouse<br>       Courtroom 8C<br>       350 West First Street<br>       Los Angeles, California 90012<br><br>Honorable Dolly M. Gee<br>United States District Judge |

**Notice of Motion to Dismiss**

**Please take notice** that Defendants David Berger, in his official capacity as Commandant of the Marine Corps, Carlos Del Toro, in his official capacity as Secretary of the Navy, and David Ottignon, in his official capacity as Deputy Commandant for Manpower and Reserve Affairs of the Marine Corps, will bring for hearing a motion to dismiss on August 26, 2022, at 9:30 a.m., before the Honorable Dolly M. Gee, United States District Judge, in courtroom 8C of the First Street United States Courthouse at 350 West First Street, Los Angeles, California 90012.

The official capacity Defendants, by and through their counsel at the Civil Division, United States Department of Justice, move to dismiss under Federal Rule of Civil Procedure 12, on the grounds that Plaintiff Mark Short has failed to establish this Court's subject-matter jurisdiction or has failed to state a claim for relief. The official capacity Defendants' motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the declarations and documents previously submitted in this case and attached hereto; and such other and further arguments, documents, and grounds as may be advanced in the future.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 9, May 13, and June 10, 2022.

Dated: June 17, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Senior Counsel, Federal Programs Branch

*Counsel for Official Capacity Defendants*

**Memorandum of Points and Authorities**

**Table of Contents**

INTRODUCTION ................................................................1

BACKGROUND ................................................................2

    I.    The Marine Corps' COVID-19 Vaccination Requirement ..................2

    II.   Federal Regulation and Guidance Concerning COVID-19 Vaccines ................................................................3

    III.  Factual Background................................................5

        A.    Plaintiff's Position as an Air Support Control Officer ..............5

        B.    The Marine Corps' Consideration of Plaintiff's Exemption Request ................................................................5

    IV.  Procedural History................................................6

LEGAL STANDARDS ........................................................7

DISCUSSION ................................................................8

    I.    Plaintiff's Claims are Unreviewable. ...............................8

        A.    Plaintiff Has Not Met the Threshold *Mindes* Requirements ................................................................9

        B.    The Non-Threshold *Mindes* Factors Weigh Strongly Against Review ................................................................10

            1.    First *Mindes* Factor: Nature and Strength of Claims......10

                a.    RFRA................................................10

                    (1)    The COVID-19 Vaccination Requirement Furthers the Government's Compelling Interests. .........11

                    (2)    Vaccination is the Least Restrictive

i

Means of Furthering the Government's
Compelling Interests. .................................16

b. First Amendment ....................................18

c. 10 U.S.C. § 1107a .................................21

d. APA ......................................................23

2. Second *Mindes* Factor: Potential Injury ........................25

3. Third and Fourth *Mindes* Factors: Interference
with Military Discretion and Expertise ..........................25

II. Counts II, III, and IV Otherwise Fail. ...................................25

CONCLUSION ..........................................................................25

# Table of Authorities

**Cases**

*Air Courier Conf. of Am. v. Am. Postal Workers Union, AFL-CIO*,
498 U.S. 517 (1991)............................................................................24

*Alexander v. Sandoval*,
532 U.S. 275 (2001)............................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................8

*Austin v. U.S. Navy SEALs 1-26*,
142 S. Ct. 1301 (2022)........................................................................11

*Banner Health v. Sebelius*,
797 F. Supp. 2d 97 (D.D.C. 2011)......................................................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................8, 24

*Bois v. Marsh*,
801 F.2d 462 (D.C. Cir. 1986)............................................................10

*Bouyer v. Lavi*,
No. 20-cv-4764, 2020 WL 5802381 (C.D. Cal. Aug. 27, 2020) ...........7

*Bridges v. Hous. Methodist Hosp.*,
543 F. Supp. 3d 525 (S.D. Tex. 2021), *appeal filed*, No. 21-2031 (5th Cir.
June 14, 2021)....................................................................................21

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014)..................................................................16

*Christoffersen v. Wash. State Air Nat'l Guard*,
  855 F.2d 1437 (9th Cir. 1988) ...........................................9, 10

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)..................................................................18

*Church v. Biden*,
  --- F. Supp. 3d ---, 2021 WL 5179215 (D.D.C. Nov. 8, 2021)..................... 10, 13

*Crosby v. Austin*,
  No. 8:21-cv-2730, 2022 WL 603784 (M.D. Fla. Mar. 1, 2022).................. 21, 23

*Davis v. Woodring*,
  111 F.2d 523 (D.C. App. 1940) .............................................17

*Diraffael v. Cal. Mil. Dep't*,
  No. 10-cv-07240, 2011 WL 13274364 (C.D. Cal. Mar. 21, 2011) ...............9. 10

*Doe #1–#14 v. Austin*,
  --- F. Supp. 3d ---, 2021 WL 5816632 (N.D. Fla. Nov. 12, 2021) .....................23

*Doe ex rel. Doe v. Franklin Square Union Free Sch. Dist.*,
  -- F. Supp. 3d --, 2021 WL 4957893 (E.D.N.Y. Oct. 26, 2021),
  *withdrawing appeal*, 2022 WL 1316221 (2d Cir. Mar. 17, 2022) .....................21

*Doe v. San Diego Unified Sch. Dist.*,
  19 F.4th 1173 (9th Cir. 2021) ................................................. 18, 19, 20

*Does 1-6 v. Mills*,
   16 F.4th 20 (1st Cir. 2021)....................................................................19

*FCC v. Prometheus Radio Proj.*,
   141 S. Ct. 1150 (2021) ........................................................................24

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ...................................................8

*Gator.com Corp. v. L.L. Bean, Inc.*,
   398 F.3d 1125 (9th Cir. 2005) .............................................................21

*Gilligan v. Morgan*,
   413 U.S. 1 (1973).................................................................................24

*Goldman v. Weinberger*,
   475 U.S. 503 (1986) ...................................................................... 11, 20

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006).................................................................... 10, 11

*Guilfoyle v. Beutner*,
   No. 2:21-cv-05009, 2021 WL 4594780 (C.D. Cal. Sept. 14, 2021)....................21

*Havasupai Tribe v. Provencio*,
   906 F.3d 1155 (9th Cir. 2018) ............................................................24

*Khalsa v. Weinberger*,
   779 F.2d 1393 (9th Cir. 1985), *aff'd*, 787 F.2d 1288 (9th Cir. 1985) ............8, 10

*Kuang v. DoD*,

   778 F. App'x 418 (9th Cir. 2019) ................................................................ 23, 25

*Las Americas Immigrant Advoc. Ctr. v. Biden*,

   ---F. Supp. 3d---, 2021 WL 5530948 (D. Or. Nov. 24, 2021) ............................22

*Logan v. U.S. Bank Nat'l Ass'n*,

   722 F.3d 1163 (9th Cir. 2013) ........................................................................21

*Mazares v. Dep't of the Navy*,

   302 F.3d 1382 (Fed. Cir. 2002) .....................................................................24

*Mindes v. Seaman*,

   453 F.2d 197 (5th Cir. 1971) ................................................................. *passim*

*Muhammad v. Sec'y of Army*,

   770 F.2d 1494 (9th Cir. 1985) ..........................................................................9

*Navy SEAL 1 v. Austin*,

   ---F. Supp. 3d---, 2022 WL 1294486 (D.D.C. Apr. 29, 2022) ................... *passim*

*Navy Seal 1 v. Biden*,

   ---F. Supp. 3d---, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021) ......................23

*Norris v. Stanley*,

   558 F. Supp. 3d 556 (W.D. Mich. 2021) ..........................................................23

*Norton v. S. Utah Wilderness All.*,

   542 U.S. 55 (2004) ..........................................................................................23

iv

*Oklahoma v. Biden*,

--- F. Supp. 3d. ---, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021) ...................2

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,

676 F.3d 829 (9th Cir. 2012) ...............................................................9

*Payne v. United States*,

88 F. App'x 281 (9th Cir. 2004) ........................................................25

*Roman Cath. Diocese of Brooklyn v. Cuomo*,

141 S. Ct. 63 (2020) ..................................................................... 11, 12

*Roth v. Austin*,

No. 8:22-cv-3038, 2022 WL 1568830 (D. Neb. May 18, 2022) ...... 13, 14, 15, 18

*Schlanger v. United States*,

586 F.2d 667 (9th Cir. 1978) ...................................................... 16, 17, 25

*Sebra v. Neville*,

801 F.2d 1135 (9th Cir. 1986) ............................................................25

*Song v. Dep't of Health & Hum. Servs.*,

No. 8:21-cv-00815-JLS-DFM, 2022 WL 1266658 (C.D. Cal. Apr. 28, 2022).....7

*Thomas Short v. Berger*,

No. 22-cv-444, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022), *appeal filed*,

No. 22-15755 (9th Cir. May 18, 2022) ........................................ *passim*

*United States v. Christie*,

825 F.3d 1048 (9th Cir. 2016) ............................................................16

*United States v. O'Brien*,
   391 U.S. 367 (1968) ............................................................................12

*We the Patriots USA, Inc. v. Hochul*,
   17 F.4th 266 (2d Cir. 2021), *clarifying*, 17 F.4th 368 (2d Cir. 2021) .......... 19, 20

*Wenger v. Monroe*,
   282 F.3d 1068 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 2002) ......................................................................8, 9

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ..........................................................7

**<u>Statutes</u>**

5 U.S.C. § 551 ....................................................................................23

5 U.S.C. § 704 ............................................................................... 23, 24

10 U.S.C. § 113 ..................................................................................22

10 U.S.C. § 1107a ...................................................................... *passim*

10 U.S.C. § 1552 ..................................................................................9

10 U.S.C. § 7013 ................................................................................22

10 U.S.C. § 8013 ................................................................................22

10 U.S.C. § 9013 ................................................................................22

21 U.S.C. § 337 .................................................................................21

21 U.S.C. § 355 .................................................................................................22

21 U.S.C. § 360bbb-3 .....................................................................................3, 22

42 U.S.C. § 262 ..............................................................................................3, 22

42 U.S.C. § 2000bb-1 ................................................................................... 10, 11

**Rules**

Fed. R. Civ. P. 12 .............................................................................................7, 8

**Regulations**

21 C.F.R. § 601.2 ...............................................................................................4

EUA Declaration,
    85 Fed. Reg. 18,250 (Apr. 1, 2020) .......................................................3

**Legislative Materials**

S. Rep. No. 103-111 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 1892 .................11

**Other Authorities**

Biologics License Applications Process,
    https://perma.cc/S6RS-NPQ9 ................................................................4

CDC, *Science Brief: COVID-19 Vaccines and Vaccination*,
    https://perma.cc/KGN4-QRUX ...........................................................13

Coronavirus: DOD Response,
    https://www.defense.gov/Spotlights/Coronavirus-DOD-Response/ ...................12

FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency
Use Authorization for First COVID-19 Vaccine,
https://perma.cc/6HEG-C6VV ................................................................4

HCP Letter,
https://www.cvdvaccine-us.com/16-up-yearsold/resources .............................23

Janssen vaccine EUA,
https://perma.cc/U2BJ-TR8S ................................................................4

Marine Corps Manual § 1005,
https://perma.cc/US95-AGG3................................................................12

Marine Corps Order 1900.16,
https://perma.cc/6A8K-P6JC ................................................................20

Marine Officer MOS Assignment Handbook,
https://perma.cc/6SR6-MR2U ................................................................5

MCO 5800.16 – V15,
https://perma.cc/2GGL-3ZA3................................................................9

Moderna vaccine EUA,
https://perma.cc/9A9L-RYMV ................................................................4

Monthly COVID-19 Update,
https://perma.cc/2VBB-2AX4 (June 1, 2022) ....................................19

SECNAVINST 1920.6D,
https://perma.cc/K45F-ARZW................................................................9

Weekly COVID-19 Update,

   https://perma.cc/US3T-WQWD (May 4, 2022) ....................................................19

**INTRODUCTION**

Plaintiff, U.S. Marine Corps First Lieutenant Mark Short, serves in a unit that deploys throughout the Indo-Pacific area to coordinate air support missions for the military.  In that role, Plaintiff works in confined spaces alongside other service members, and may be called upon at a moment's notice to build Direct Air Support Centers ("DASCs") on remote islands under austere conditions.

Although Plaintiff has complied with many vaccination requirements during his military career, he requested a religious exemption from the directive that service members be vaccinated against COVID-19.  The Marine Corps denied Plaintiff's request after multiple rounds of careful review.  Plaintiff continued to refuse to follow a lawful order to be vaccinated, and he subsequently filed this action to challenge the Marine Corps' COVID-19 vaccine directive, claiming that the requirement violates his rights under the Religious Freedom Restoration Act ("RFRA"), the First Amendment, 10 U.S.C. § 1107a, and the Administrative Procedure Act ("APA").

These theories are meritless.  First, Plaintiff's claims are not reviewable pursuant to the *Mindes* test.  Plaintiff still has not exhausted available intraservice remedies, and his religious freedom claims are unpersuasive for the reasons previously identified by the Court.  Equally unavailing are Plaintiff's claims under § 1107a and the APA, particularly as Plaintiff has been offered doses of Comirnaty—the COVID-19 vaccine licensed by the Food and Drug Administration ("FDA")—and the military is requiring only approved vaccines.  Plaintiff also has not identified any significant injury if this Court were to withhold review at this juncture; by contrast, he improperly asks the Court to compel the Marine Corps to overlook his unvaccinated status and the undue risk he poses to mission accomplishment.  For these reasons, and those discussed below, the Court should dismiss Plaintiff's First Amended Complaint.

**BACKGROUND**

**I.      The Marine Corps' COVID-19 Vaccination Requirement**

"The COVID vaccination mandate should be understood against the backdrop of other military immunization mandates–which date back as far as General George Washington's mandate that troops in the Continental Army be inoculated against smallpox." *Oklahoma v. Biden*, --- F. Supp. 3d. ---, 2021 WL 6126230, at *8 (W.D. Okla. Dec. 28, 2021).   DoD's current immunization program is governed by DoD Instruction ("DoDI") 6205.02.   Nine vaccines are required for all service members, including the annual influenza vaccine, while eight others are required when certain elevated risk factors are present, such as deployment to certain parts of the world. *See* App. 067 (Air Force Instruction ("AFI") 48-110_IP, Tbl. D-1).[1]   In general, DoD aligns its immunization requirements for service members with recommendations from the CDC's Advisory Committee on Immunization Practices.  *Id.* at 013 (DoDI 6205.02 at 3).   The Military Services have separately issued regulatory guidance for the administration of vaccines to service members, including processes concerning medical and religious exemptions.  *See id.* at 044-45 (DoDI 6205.02, Ch. 2.6).

On August 24, 2021, the day after FDA granted approval to the first COVID-19 vaccine, the Secretary of Defense announced that vaccination against COVID-19 would be added to the list of required immunizations.  First Am. Compl. ¶ 86, ECF No. 49 ("FAC"); App. 004-05 (Mem. for Senior Pentagon Leadership (Aug. 24, 2021)).   The Secretary explained that, "[a]fter careful consultation with medical experts and military leadership," he had concluded that "mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people."  App. 004.   On August 30, 2021, the Department of the Navy issued implementing guidance for the Navy and the Marine Corps.  FAC ¶ 21; App. 075

---

[1] The Appendix is located at ECF No. 17-1 and is attached hereto for ease of reference.  Also attached are ECF No. 2-2 and ECF No. 32-1, cited below.

(ALNAV 062/21).  The Secretary of the Navy directed all members of the Marine Corps to be fully vaccinated within 90 days.  *Id.*

In accordance with ALNAV 062/21, the Marine Corps issued guidance on September 1, 2021, which includes a process concerning medical and religious exemptions from the COVID-19 vaccine requirement.  FAC ¶ 22; App. 080-81 (MARADMIN 462/21 ¶¶ 3.j, 3.k); *see* App. 162-64 (Decl. of Adam Lyle Jeppe ¶¶ 4-7).  The Marine Corps has an appeal process available to service members seeking religious exemptions if their initial requests are denied.  App. 093-94 (Decl. of Peter D. Huntley ¶ 12.b).  A service member who refuses vaccination without an approved exemption is subject to discipline or adverse administrative action, including separation from service.  *Id.* at 094-99 (Huntley Decl. ¶¶ 13-21).  Only senior military officers may initiate adverse action for refusing vaccination. *See id.* at 081 (MARADMIN 462/21 ¶ 3.l).  The Marine Corps has also decided that "[t]he least favorable characterization of service authorized for an officer refusing the vaccine is 'General (under honorable conditions),' unless inclusion of another basis for separation warrants characterization of the officer's service as 'other than honorable.'"  MARADMIN 612/21 ¶ 4.b, attached hereto as Ex. A; FAC ¶ 24.

## II.    Federal Regulation and Guidance Concerning COVID-19 Vaccines

FDA has authority to review and approve "biological products," including vaccines.  42 U.S.C. § 262(a)(1), (i)(1).  In an emergency, FDA may issue an "emergency use authorization" ("EUA"), which authorizes the marketing of vaccines (and other FDA-regulated products) "intended for use" in responding to the emergency, provided certain statutory criteria are met.  21 U.S.C. § 360bbb-3.

In March 2020, the Secretary of Health and Human Services determined that "circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic."  EUA Declaration, 85 Fed. Reg. 18,250, 18,250-51 (Apr. 1, 2020).  Based on that determination, FDA issued an EUA for a COVID-19 vaccine developed by Pfizer, Inc., as well as EUAs for

two other COVID-19 vaccines.  *See* FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine, https://perma.cc/6HEG-C6VV; *see also* https://perma.cc/9A9L-RYMV (Moderna vaccine EUA); https://perma.cc/U2BJ-TR8S (Janssen vaccine EUA).

On August 23, 2021, FDA approved a Biologics License Application ("BLA") for the Pfizer vaccine, for individuals who are 16 years of age and older. FAC ¶ 88; FDA, BLA Approval, attached hereto as Ex. B; *see also* Biologics License Applications (BLA) Process (CBER), https://perma.cc/S6RS-NPQ9.   A BLA is an application for approval to introduce, or deliver for introduction, a biologic product into interstate commerce.  21 C.F.R. § 601.2.  "Comirnaty"—the proprietary name of the COVID-19 vaccine manufactured by Pfizer—remains available under the EUA for the approved and other uses.  FDA, Pfizer EUA Letter at 2, attached hereto as Ex. C; FAC ¶ 89.  At the time of approval, FDA worked with Pfizer to identify "BLA-compliant" lots of the vaccine, which are lots that were manufactured in facilities listed in the BLA and that had undergone lot release, but which bore the EUA label.  FDA, Summary Basis for Regulatory Action ("SBRA") at 27, attached hereto as Ex. D.  FDA additionally determined that the approved and EUA vaccine have the same formulation, and could be used interchangeably without presenting any safety or effectiveness concerns.  FAC ¶ 90; Ex. C (Pfizer EUA Letter) at 2.  DoD relied on this determination, as well as FDA guidance that health care providers may "use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine[,]" in deciding that "DoD health care providers will use both the Pfizer-BioNTech COVID-19 vaccine and the Comirnaty COVID-19 vaccine interchangeably for the purpose of vaccinating Service members[.]"  Acting Assistant Secretary of Defense Mem. (Sept. 14, 2021), attached hereto as Ex. E; FAC ¶ 96.  On January 31, 2022, FDA approved a second COVID-19 vaccine, Spikevax, manufactured by ModernaTX, Inc. FDA, BLA Approval, attached hereto as Ex. F.

### III.   Factual Background

#### A. Plaintiff's Position as an Air Support Control Officer

Plaintiff is a first lieutenant and Air Support Control Officer assigned to Marine Air Support Squadron 2 ("MASS-2") at Marine Corps Air Station Futenma, Okinawa, Japan.  FAC ¶ 1; App. 152-53 (Decl. of Jeremy W. Beaven ¶ 3).  Air Support Control Officers "plan, direct, and coordinate air support missions in support of . . . operations[,]" and "are responsible for processing immediate requests for close air support and medical evacuations, integrating aviation with other supporting arms, and procedurally controlling aircraft throughout the . . . area of operations."  Marine Officer MOS Assignment Handbook at 121, *available at* https://perma.cc/6SR6-MR2U; *see also* App. 153 (Beaven Decl. ¶ 3) ("They are commonly referred to as the Marine Corps' '911 operators.'").  Plaintiff typically works in a 14 x 17 ft. office among 10 other Marines, though during training events "he often works in more confined spaces[,]" and "could be in close proximity to up to 150 individuals from a variety of military services, agencies, and nations."  App. 153 (Beaven Decl. ¶ 4); *see* FAC ¶ 58; Decl. of Scott M. Koltick ¶ 11, attached hereto as Ex. G.  He may "be called upon to establish a DASC on a highly remote island under extremely austere conditions."  App. 153 (Beaven Decl. ¶ 4).

#### B. The Marine Corps' Consideration of Plaintiff's Exemption Request

Plaintiff requested a religious accommodation to exempt him from the COVID-19 vaccination requirement based on his understanding that the vaccine is derived from fetal stem cells, and because he objects to the use of mRNA technology.  FAC ¶ 39; *see* ECF No. 2-2 (Decl. of Mark Short) at 10-11.  A chaplain and at least three officers in Plaintiff's chain of command individually evaluated the request.  ECF No. 2-2 (Short Decl.) at 7-9, 12-13.  A religious accommodation review board likewise considered Plaintiff's request.  *Id.* at 50; *see also* App. 163-64 (Jeppe Decl. ¶ 6).  Based on consideration of each of those evaluations and the arguments made by Plaintiff, as well as other available information, the Assistant

Deputy Commandant for Manpower and Reserve Affairs initially denied the religious exemption request in October 2021.  FAC ¶ 40; ECF No. 2-2 (Short Decl.) at 20.  Plaintiff appealed.  FAC ¶ 43; ECF No. 2-2 (Short Decl.) at 22-23.

On February 15, 2022, the Assistant Commandant of the Marine Corps disapproved the appeal.  FAC ¶ 44; ECF No. 2-2 (Short Decl.) at 66-69.  He determined that the vaccination directive did not substantially burden Plaintiff's sincere belief, in part because a non-mRNA vaccine is available.  ECF No. 2-2 (Short Decl.) at 67.  The Assistant Commandant further found that even if the directive burdened a sincere belief, vaccination was the least restrictive means of serving the Marine Corps' compelling interests.  *See id.* at 67-68 (considering Plaintiff's arguments, working conditions, and service record; the evidence underlying vaccination; and the needs of the force).  As the Assistant Commandant explained to Plaintiff, "an exemption from the COVID-19 vaccination poses a significant risk to military readiness, and the health and safety of the force, particularly in your case, where you work primarily indoors and cannot perform your duties as an air support control officer remotely."  *Id.* at 68.  The Assistant Commandant also noted that Plaintiff works in close proximity to others, is attached to a deployable unit, and must be ready to deploy at a moment's notice.  *Id.*  The Assistant Commandant determined that the proposed less restrictive alternatives were not as effective as vaccination and realistically incompatible with the demands of military life.  *Id*.  On February 17, 2022, Plaintiff was given seven days to begin a vaccination series.  *Id.* at 70; FAC ¶ 45.

**IV.   Procedural History**

Plaintiff filed his Complaint on February 18, 2022, asserting as-applied challenges to the military's COVID-19 vaccination policies under RFRA, the First Amendment, 10 U.S.C. § 1107a, and the APA.  Compl. ¶¶ 34-70, ECF No. 1.  That same day, Plaintiff moved for a temporary restraining order and preliminary injunction, seeking to enjoin the Navy and the Marine Corps from enforcing the

vaccine directive against Plaintiff and from "[t]aking any adverse action" against him on the basis of his vaccine refusal.  ECF No. 2-4, at 1-2; ECF No. 2, at 2.

On February 20, 2022, the Court granted Plaintiff's *ex parte* application for a temporary restraining order.  ECF No. 14, at 2.  In doing so, "the Court emphasize[d] that its assessment of the merits is extremely limited at this stage[,]" and "merely conclude[d] that Plaintiff raises issues that warrant full briefing and oral argument, and a preservation of the status quo until then."  *Id.* at 2 n.2.  The Court heard Plaintiff's motion for a preliminary injunction on March 3, and denied the motion the same day.  Order, ECF No. 25.  On March 23, the Court denied Plaintiff's *ex parte* application for an expedited briefing schedule on a second motion for a preliminary injunction (which Plaintiff did not ultimately file).  ECF No. 35.  Defendants moved to dismiss Plaintiff's Complaint on May 16, ECF No. 47, and Plaintiff amended his Complaint on May 24, ECF No. 49.[2]

## LEGAL STANDARDS

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's subject-matter jurisdiction.  *Bouyer v. Lavi*, No. 20-cv-4764, 2020 WL 5802381, at *2 (C.D. Cal. Aug. 27, 2020).  In deciding a Rule 12(b)(1) motion, a court may consider materials outside the pleadings.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A court lacks subject-matter jurisdiction over claims that are moot.  *Id.*

A Rule 12(b)(6) motion tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[2] Pursuant to a stipulation, the Court dismissed Plaintiff's individual capacity claims against Defendants on March 23.  ECF No. 36.  In his FAC, Plaintiff again asserts individual capacity claims against various federal officials.  FAC ¶¶ 2-6.  This motion is filed on behalf of Defendants in their official capacity.  Plaintiff has not identified a waiver of sovereign immunity concerning his request for damages against such Defendants.  FAC at 31; *see Song v. Dep't of Health & Hum. Servs.*, No. 8:21-cv-00815-JLS-DFM, 2022 WL 1266658, at *1 (C.D. Cal. Apr. 28, 2022).

face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"   *Twombly*, 550 U.S. at 555 (internal citations omitted).   For purposes of a Rule 12(b)(6) motion, a court may consider "not only documents attached to the complaint, but also documents whose contents are alleged in the complaint, provided the complaint 'necessarily relies' on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested."   *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 795 (N.D. Cal. 2011).   Additionally, the Ninth Circuit has explained that "the doctrine of limited reviewability of certain military regulations and decisions is a matter of justiciability," and is therefore properly evaluated pursuant to Rule 12(b)(6).   *Khalsa v. Weinberger*, 779 F.2d 1393, 1395-96 (9th Cir. 1985), *aff'd*, 787 F.2d 1288 (9th Cir. 1985).   In conducting that analysis, a court may consider declarations or affidavits from military officials.   *Id.* at 1400.

## DISCUSSION

### I.   Plaintiff's Claims are Unreviewable.

A plaintiff challenging military decision-making must satisfy two threshold elements before a court can determine whether review of his claims is appropriate: the plaintiff must (1) allege a violation of a recognized constitutional right, a federal statute, or a military regulation; and (2) exhaust available intraservice remedies.   *Wenger v. Monroe*, 282 F.3d 1068, 1072-73 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 2002) (citing *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971)).   If a plaintiff meets both threshold requirements of the *Mindes* test, the court weighs four factors in deciding whether a claim is reviewable: (1) the nature and strength of the claim; (2) the potential injury to the plaintiff if review is refused; (3) the extent of interference with military functions; and (4) the extent to

which military discretion or expertise is involved.  *Id*. at 1073-75.  The third and fourth factors are typically considered together.  *Id*. at 1075.

### A. Plaintiff Has Not Met the Threshold *Mindes* Requirements

Plaintiff fails to satisfy the threshold *Mindes* factor of exhaustion of available intraservice remedies.[3]  "Although he has received a decision on his appeal, he still must undergo separation proceedings before any permanent adverse consequences are imposed."  Order, ECF No. 25, at 5.  The matter is currently pending before a team of judge advocates at Headquarters Marine Corps, who will screen the separation package for procedural completeness and legality prior to forwarding it to the staff of the Deputy Commandant.  Ex. G (Koltick Decl.) ¶¶ 7, 9.  The Deputy Commandant will consider the documentation and decide whether to retain Plaintiff or recommend separation.  *Id.*; App. 098 (Huntley Decl. ¶ 18); App. 156-57 (Beaven Decl. ¶ 9); ECF No. 2-2 (Short Decl.) ¶ 14; *see also* MCO 5800.16 – V15, § 0110, https://perma.cc/2GGL-3ZA3.   Any recommendation to separate would be presented to the Assistant Secretary of the Navy, who will make a final decision on separation and, if necessary, characterization of service.  Ex. G (Koltick Decl.) ¶¶ 7-9; SECNAVINST 1920.6D at 4 & encl. 10 § 6, https://perma.cc/K45F-ARZW.  And even if Plaintiff is separated, he may seek reinstatement from the Board for Correction of Naval Records.  App. 100-01 (Huntley Decl. ¶ 23); 10 U.S.C. § 1552; *see Christoffersen v. Wash. State Air Nat'l Guard*, 855 F.2d 1437, 1442 (9th Cir. 1988).   Accordingly, Plaintiff's claims are not reviewable at this juncture.  Order, ECF No. 25, at 5; *see also Diraffael v. Cal. Mil. Dep't*, No. 10-cv-07240, 2011 WL

---

[3] In a case outside the military context, the Ninth Circuit "decline[d] . . . to read an exhaustion requirement into RFRA where the statute contains no such condition." *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012).  But in military cases, courts must consider exhaustion regardless of the type of claim asserted.  *Wenger*, 282 F.3d at 1072-73; *see Muhammad v. Sec'y of Army*, 770 F.2d 1494, 1495 (9th Cir. 1985); *Thomas Short v. Berger*, No. 22-cv-444, 2022 WL 1203876, at *10 (D. Ariz. Apr. 22, 2022) (distinguishing *Oklevueha*), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022).

13274364, at *2-3 (C.D. Cal. Mar. 21, 2011).

Plaintiff suggests that he has fulfilled the exhaustion requirement because "none of these [additional] processes can remedy the denial of his religious accommodation request nor can they prevent his resulting involuntary separation from the Marine Corps." FAC ¶ 50; *see id.* ¶ 9. That is incorrect, as the Deputy Commandant, Assistant Secretary, and Board for Correction of Naval Records may decide that Plaintiff should be retained notwithstanding his failure to follow a lawful order to be vaccinated. Ex. G (Koltick Decl.) ¶¶ 7-8; App. 100-01 (Huntley Decl. ¶ 23); *see, e.g.*, *Christoffersen*, 855 F.2d at 1442; *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986); Order, ECF No. 25, at 5; *Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021).[4]

## B. The Non-Threshold *Mindes* Factors Weigh Strongly Against Review

### 1. First *Mindes* Factor: Nature and Strength of Claims

As explained below, Plaintiff's "claims are meritless" and therefore deserve little weight (if any), notwithstanding that one includes a First Amendment challenge. *Christoffersen*, 855 F.2d at 1443-44; *see also Khalsa*, 779 F.2d at 1399 (concluding that the first factor disfavored review, because "if the district court had reached the merits, appellant would have lost").

#### a. RFRA

The Marine Corps' denial of Plaintiff's exemption request was consistent with RFRA. "Under RFRA, the Federal Government may not . . . substantially burden a person's exercise of religion, 'even if the burden results from a rule of general applicability.'" *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb-1(a)). "The only exception

---

[4] In his FAC, Plaintiff does not assert that any exception to the exhaustion requirement applies. Nor could he, as the Court previously explained. Order, ECF No. 25, at 5-6 (rejecting argument that exhaustion would be futile).

recognized by the statute requires the Government to satisfy the compelling interest test—to 'demonstrat[e] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000bb-1(b)). As this Court found, requiring Plaintiff to be vaccinated furthers the compelling interests of military readiness and health and safety of service members, and is the least restrictive means of furthering those interests.

### (1)   The COVID-19 Vaccination Requirement Furthers the Government's Compelling Interests.

"[W]hen evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); *see also Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022) (mem.) (Kavanaugh, J., concurring) (observing that a stay of a preliminary injunction was warranted because the district court had "in effect inserted itself into the Navy's chain of command, overriding military commanders' professional military judgments," and because "even accepting that RFRA applies in this particular military context, RFRA does not justify judicial intrusion into military affairs in this case"); S. Rep. No. 103-111, at 12 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 (deference principles apply to RFRA claims).

Even if Plaintiff has set forth a sincerely held religious belief, requiring Plaintiff to be vaccinated against COVID-19 furthers compelling military interests, especially when evaluated against the backdrop of the substantial deference that courts have always given to military operational decision-making. As the Supreme Court has recognized, "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63,

67 (2020) (per curiam).  It is all the more compelling in the military, given the "vital interest" in maintaining a fighting force "that functions with maximum efficiency and is capable of easily and quickly responding to continually changing circumstances."  *United States v. O'Brien*, 391 U.S. 367, 381 (1968).

The record demonstrates the military's compelling interest in ensuring that Plaintiff is vaccinated against COVID-19.  The members of Plaintiff's unit work and train in close proximity to each other, cannot perform their duties remotely, and must be ready to deploy "at a moment's notice[,]" including to austere environments and countries that have imposed COVID-19 entry restrictions.  App. 153-55, 157-58 (Beaven Decl. ¶¶ 4-6, 10); *see also* ECF No. 2-2 (Short Decl.) at 7, 67-68; App. 166-68 (Jeppe Decl. ¶¶ 14-16); Marine Corps Manual § 1005 ¶¶ 1, 2.b, https://perma.cc/US95-AGG3; FAC ¶ 58.  As the Marine Corps explained, in refusing the vaccine, Plaintiff unduly risks not only contracting COVID-19 and becoming seriously ill, but also jeopardizing "the health and medical readiness of other persons within [his] unit, which in turn decreases the military readiness of the unit and the Marine Corps as a whole."  ECF No. 2-2 (Short Decl.) at 7, 67-68.  His refusal is also inconsistent with the United States' foreign policy interests.  App. 155-56 (Beaven Decl. ¶ 7).

These Plaintiff-specific considerations are supported by broader interests in military readiness.  There have been more than 415,000 COVID-19 cases within the military; more than 2,600 service members have been hospitalized, and 95 have died.  Coronavirus: DOD Response, https://www.defense.gov/Spotlights/Coronavirus-DOD-Response/.  Nearly all service members who have died were not fully vaccinated.  App. 143 (Decl. of Maj. Scott Stanley ¶ 3).  COVID-19 has also affected military "exercises, deployments, redeployments, and other global force management activities"; caused the cancellation of numerous "major training events, many of which involved preparedness and readiness training with our foreign

12

partners"; and "required significant operational oversight" by the most senior military leaders. *Id.* at 143-47 (Stanley Decl. ¶¶ 3-12). By contrast, vaccination has permitted higher levels of occupancy in DoD facilities and in-person training. *Id.* at 147 (Stanley Decl. ¶ 14). Accordingly, there can be no serious dispute that vaccination against COVID-19 serves compelling military interests. Order, ECF No. 25, at 9; *see also, e.g.*, *Navy SEAL 1 v. Austin*, ---F. Supp. 3d---, 2022 WL 1294486, at *9 (D.D.C. Apr. 29, 2022) ("[N]o court has ever held that the military does not have a compelling interest in the health of its troops, and no court has suggested that vaccination against harmful diseases does not serve a compelling government interest."), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022); *Church*, 2021 WL 5179215, at *18 (requiring vaccination is "supported by a lengthy record replete with data demonstrating the necessity of a general vaccine mandate").

Plaintiff asserts that vaccination is not necessary for readiness because vaccines do not prevent infection or transmission of, or even death from, COVID-19. FAC ¶¶ 63-68. But the military generally aligns its immunization requirements with recommendations from the CDC, App. 013 (DoDI 6205.02 at 3), and the CDC has found that although vaccinated people "can still become infected and have the potential to spread the virus to others," they do so "at much lower rates than unvaccinated people," CDC, *Science Brief: COVID-19 Vaccines and Vaccination*, https://perma.cc/KGN4-QRUX; *see also* App. 115-16, 127-36 (Decl. of Col. Tonya Rans ¶¶ 16, 30-40) (explaining that "[e]vidence continues to show that the incidence of [COVID-19] infection, hospitalization, and death is higher in unvaccinated than vaccinated people[,]" and vaccination remains the most effective means of protection against the Omicron variant); *Roth v. Austin*, No. 8:22-cv-3038, 2022 WL 1568830, at *21 (D. Neb. May 18, 2022) (rejecting argument similar to Plaintiff's); *Navy SEAL 1*, 2022 WL 1294486, at *10 ("[T]he overwhelming weight of scientific authority supports the proposition that COVID-19 vaccination reduces the severity

and duration of disease.").  And the military has an interest not only in preventing the spread of disease among its ranks, but also in ensuring that members do not get seriously ill, hospitalized, or die from diseases, especially while deployed.  *See* App. 105-14 (Rans Decl. ¶¶ 7-12); *id.* at 182-83 (Decl. of James Lee Hancock ¶ 6).

Nor are the military's interests diminished by the fact that "more than 97% of the Marine Corps is vaccinated."  FAC ¶ 125.  The premise of this "herd immunity" argument is flawed.  "The percentage of immune individuals needed to assure lack of sustained transmission in a group . . . has not been definitely established for" COVID-19.  App. 187 (Hancock Decl. ¶ 13).  Even if herd immunity had been achieved, it is not as effective as vaccination at protecting a service member from infection, preventing the spread of COVID-19, or combatting the disease.  *Id.* at 121-23 (Rans Decl. ¶¶ 24-26).  As noted above, unvaccinated service members are at an increased risk of infection and may spread the virus to others, and thus still pose an undue risk of harm to maintaining a healthy force; for these reasons, the military has not set any benchmark to cease immunization requirements based on herd immunity.  *Id.*; *see Roth*, 2022 WL 1568830, at *27 ("The Court concludes the 'everyone else did it so I don't have to' argument fails.").

Plaintiff also asserts that "[b]ecause of [his] youth and excellent health, he is highly unlikely to suffer a serious case of COVID-19."  FAC ¶ 62.  But aside from the risk that he might spread the infection to those less healthy, "it is a misguided assumption that those who are otherwise healthy could not develop severe, or even fatal, disease."  App. 105-06 (Rans Decl. ¶ 7).

Finally, Plaintiff points to examples of his past assignments and training in support of his theory that the Marine Corps lacks a compelling interest in his vaccination.  FAC ¶¶ 51-61.  At least three of those examples, however, appear to have occurred before Marines were required to be vaccinated pursuant to ALNAV 062/21.  *Id.* ¶¶ 51-53; Ex. G (Koltick Decl.) ¶ 13; *see* Order, ECF No. 25, at 13

("[M]erely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them."); *accord Roth*, 2022 WL 1568830, at *28 ("The Air Force simply was not required to continue to 'muddle through' with less effective means once superior means of furthering its compelling interest, in the form of FDA-approved vaccines, were available.").  Plaintiff also undermines his own argument in highlighting not only that he has "regular personal contact with other Marines," but also that he trains for many consecutive hours in "an enclosed, windowless room" occupied by as many as 60 people.  FAC ¶¶ 57-58.  Further, participation in routine, on-island training—in close proximity to medical treatment facilities—says nothing about the risk that an unvaccinated service member poses should his unit be required to fulfill its mission upon deployment—or whether that service member may even be permitted to deploy to a country with a COVID-19 vaccine entry requirement.  Ex. G (Koltick Decl.) ¶ 13; *see id.* ¶ 14 (providing additional context to Plaintiff's allegations, including explaining that in April 2022 "1stLt Short was ineligible to deploy to Korea to participate with the primary exercise component due to his unvaccinated status"); *cf. Thomas Short*, 2022 WL 1203876, at *13 (concluding that teleworking is not a less restrictive alternative to vaccination "even though the leadership at MCAS Yuma has allowed Major Short on a few recent occasions to interact with other Marines without taking mitigation measures. These episodes do nothing to detract from the USMC's broader, compelling interest in avoiding the spread of COVID-19.").

Consistent with its prior determination, and well as those of other courts, the Court should thus conclude that Defendants have demonstrated the Marine Corps' compelling interests in Plaintiff's vaccination.

15

## (2)     Vaccination is the Least Restrictive Means of Furthering the Government's Compelling Interests.

The Court should also again conclude that requiring Plaintiff to be vaccinated against COVID-19 is the least restrictive means of furthering the Marine Corps' compelling interests in ensuring that service members are as physically prepared as possible to execute their duties and in minimizing avoidable risks to mission success. In conducting this analysis, the Court asks whether the military could "achieve its compelling interest[s] to the same degree while exempting [Plaintiff] from complying" with the COVID-19 vaccination requirement. *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016); *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 731 (2014) (examining whether alternative served interest "equally well"). The answer to that question is plainly "no": vaccines are singularly effective at preventing COVID-19 infection and reducing the severity of illness.  App. 182-83 (Hancock Decl. ¶ 6); ECF No. 2-2 (Short Decl.) at 67-68.

By contrast, in requesting a religious exemption, Plaintiff did not suggest any specific less restrictive alternatives to vaccination.  *See* ECF No. 2-2 (Short Decl.) at 10-11, 68; *see also* Order, ECF No. 25, at 10.  Plaintiff now asserts with respect to his RFRA claim that "Defendants possess multiple lesser restrictive methods of maintaining force readiness without Mark Short receiving the Comirnaty vaccine, including temporarily transferring Mark Short to a non-deployable unit" or "separat[ing] Short with an honorable discharge based on the convenience of the government[.]"  FAC ¶ 112.  Plaintiff notably did not raise these alternatives at any stage in the administrative process.  ECF No. 2-2 (Short Decl.), at 10-11, 13, 22-23. In any event, the Marine Corps has determined that its interest in readiness is not furthered by transferring Plaintiff—who is trained as an Air Support Control Officer, FAC ¶ 12—to a non-deployable unit, and Plaintiff can offer no basis to second-guess that determination.  *See Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir.

16

1978) ("[F]ederal courts should not review internal military decisions such as duty orders or duty assignments."). That is particularly true given the cumulative effects of transferring all Marines who object to the vaccine on religious grounds. *See* Order, ECF No. 25, at 6. Moreover, it is unclear why such a re-assignment would be "temporar[y]," FAC ¶ 112, given that Plaintiff is seeking a "permanent exemption," ECF No. 2-2 (Short Decl.) at 10. Additionally, simply because a Marine serves in a non-deployable unit does not mean that the military lacks a compelling interest in his vaccination. *Thomas Short*, 2022 WL 1203876, at *13.

As to Plaintiff's theory regarding an honorable discharge, Defendants agree that separating a service member who refuses a lawful order to be vaccinated promotes the Marine Corps' compelling interests, particularly insofar as it obviates the possibility that the service member will transmit COVID-19 and cause others to become seriously ill. But Plaintiff does not explain how the specific characterization of service bears on the analysis regarding least restrictive means; improperly attempts to dictate how the military must account for his failure to follow a lawful order, *see Davis v. Woodring*, 111 F.2d 523, 525 (D.C. App. 1940); *see also* Ex. A (MARADMIN 612/21 ¶ 4.b) (allowing for possibility of honorable discharge); and fails to consider the cumulative effects of compelling the military to grant honorable discharges for service members who similarly refuse to follow lawful orders.

Plaintiff also raises the possibility of masking and testing as less restrictive alternatives. FAC ¶ 124.[5] But that conclusory allegation is both untethered from Plaintiff's specific circumstances and simply incorrect. As the Assistant Commandant explained, "[w]hile masking, periodic testing, social distancing, hygiene, teleworking, and other similar measures, individually or in combination, have been shown to help slow the spread of the virus, they are simply not as effective

---

[5] Plaintiff references these alternatives in connection with his First Amendment claim, but not his RFRA claim. *Compare* FAC ¶ 112 *with id.* ¶ 124.

as vaccination." ECF No. 2-2 (Short Decl.) at 68. Further, "these measures are often incompatible with the demands of military life, where Marines and Sailors must live, work, realistically train, and, if necessary, fight in close quarters." *Id.*; App. 153-54 (Beaven Decl. ¶ 4); App. 182 (Hancock Decl. ¶ 5); *see Roth*, 2022 WL 1568830, at *23-24; *Thomas Short*, 2022 WL 1203876, at *13; ECF No. 18-1 (Hrg. Tr. 37-42, *Dunn v. Austin*, No. 2:22-cv-00288 (E.D. Cal. Feb. 22, 2022)). Nor would these measures permit Plaintiff to enter countries that bar unvaccinated foreigners. Ex. G (Koltick Decl.) ¶ 12.

In sum, the military's vaccine policy is narrowly tailored to serve compelling military interests. Plaintiff's RFRA claim thus fails.

### b.     First Amendment

Plaintiff's First Amendment claim is also meritless. Neutral laws of general applicability need not be justified by a compelling interest to satisfy the Free Exercise Clause. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). Here, the Marine Corps' vaccination requirement is facially neutral toward religion: it requires all non-exempted service members to be fully vaccinated, its terms "do not make any reference to religion," and it was not "implemented with the aim of suppressing religious belief." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021).

Plaintiff asserts that the Marine Corps' directive is "not neutral and generally applicable" because it "grant[s] exemptions for non-religious reasons on more favorable terms than religious reasons" and "allow[s] exemptions for service members already participating in COVID-19 vaccine trials." FAC ¶ 122; *see id.* ¶¶ 75-78. But that argument is entirely unpersuasive. The Marine Corps' objective in requiring vaccination is to ensure a maximally healthy force. Vaccinating someone for whom a vaccine is medically contraindicated would undermine, not further, that goal. App. 091-92 (Huntley Decl. ¶¶ 9-11); *id.* at 185-86 (Hancock

18

Decl. ¶¶ 10-11); *Navy SEAL 1*, 2022 WL 1294486, at *12. Indeed, the Ninth Circuit has already rejected the same argument Plaintiff presses here, explaining that medical exemptions for students with contraindications to COVID-19 vaccines "serve[] the primary interest for imposing the mandate—protecting student 'health and safety'"—thereby furthering relevant government interests even where no religious exemptions whatsoever are offered. *Doe*, 19 F.4th at 1178; *see also We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 285 (2d Cir. 2021) (per curiam), *clarifying*, 17 F.4th 368 (2d Cir. 2021); *Does 1-6 v. Mills*, 16 F.4th 20, 30-31 (1st Cir. 2021); Order, ECF No. 25, at 11-12. And the inability of some members to receive the vaccine for a period of time only increases the Marine Corps' compelling interest in maximizing the vaccination of other service members to prevent the spread of the disease. *See* Order, ECF No. 25, at 7-8, 13.

Plaintiff's First Amendment argument is factually flawed as well. His suggestion that non-religious exemptions are granted more readily than religious exemptions is contradicted by declarations submitted by Defendants. App. 090-94 (Huntley Decl. ¶¶ 7-12) (discussing differences between medical and religious exemption requests); *id.* at 186-87 (Hancock Decl. ¶¶ 11-12) (addressing Plaintiff's misunderstanding of the medical exemption process). Furthermore, the Marine Corps is granting mostly *temporary* medical exemptions. App. 171-78; Order, ECF No. 25, at 7-8; *see Doe*, 19 F.4th at 1179 (due to its "temporary duration," a 30-day exemption did not "undermine" a school district's "interests in student health and safety the way a religious exemption would").[6] Similarly, the Marine Corps has temporarily granted exemptions to those participating in vaccine trials, with the

---

[6] Plaintiff's allegations also indicate that the number of such exemptions is trending downward. *See* FAC ¶ 77 (alleging 947 medical and administrative exemptions as of April 13, 2022); Weekly COVID-19 Update, https://perma.cc/US3T-WQWD (872 such exemptions as of May 4, 2022); Monthly COVID-19 Update, https://perma.cc/2VBB-2AX4 (742 such exemptions as of June 1, 2022).

1    expectation that participants will eventually become vaccinated.   App. 081
2    (MARADMIN 462/21 ¶ 3.j.7); *see also id.* at 185-86 (Hancock Decl. ¶ 10).
3    Plaintiff's religious beliefs, by contrast, are permanent, ECF No. 2-2 (Short Decl.)
4    at 10, as presumably are those of the thousands of other Marines who have requested
5    religious exemptions from the COVID-19 vaccination requirement, App. 175.   Like
6    Plaintiff, many of these service members likely work in deployable units or in close
7    physical contact with others for extended periods of time.   As the Court recognized,
8    Order, ECF No. 25, at 6, granting all the requests would force the military to allow
9    thousands of unvaccinated Marines to serve, risking the spread of disease,
10   hospitalizations, and death within multiple units.   *See* ECF No. 2-2 (Short Decl.) at
11   67-68; App. 166-69 (Jeppe Decl. ¶¶ 14-18); *see also Doe*, 19 F.4th at 1179; *We the*
12   *Patriots*, 17 F.4th at 286; *Thomas Short*, 2022 WL 1203876, at *14-15.   Plaintiff
13   also fails to acknowledge that service members who are unvaccinated for any reason
14   are subject to certain restrictions and may be separated if not deployable for 12
15   months.   App. at 185-86 (Hancock Decl. ¶¶ 11-12); Marine Corps Order 1900.16,
16   Ch. 2 §§ 1601-03, https://perma.cc/6A8K-P6JC.

17        Plaintiff's argument also overlooks the Supreme Court's recognition that
18   "review of military regulations challenged on First Amendment grounds is far more
19   deferential than constitutional review of similar laws or regulations designed for
20   civilian society."   *Goldman*, 475 U.S. at 507.   Accordingly, "when a member of the
21   military challenges a regulation or policy of the military on Free Exercise grounds,
22   courts should normally apply a level of scrutiny below that of strict scrutiny and
23   evidently comparable to rational basis review."   *Navy SEAL 1*, 2022 WL 1294486,
24   at *13.   In light of Defendants' detailed showing as to why a vaccination mandate is
25   necessary to serve compelling interests in military readiness and protecting the
26   health of a military force, *see supra* at 11-15, the Marine Corps' directive readily
27   survives both the review contemplated by *Goldman* and strict scrutiny.

28

### c.     10 U.S.C. § 1107a

In Count III of his FAC, Plaintiff challenges the specific vaccine dose offered to him, asserting that he has inquired about the availability of Comirnaty-labeled doses and that any other doses violate his statutory rights.  FAC ¶¶ 47, 131-32; *see id.* ¶¶ 98-100.  However, on June 2, 2022, Defendants offered Plaintiff doses of the Comirnaty-labeled COVID-19 vaccine.  Ex. H, attached hereto.  Although Plaintiff has not indicated whether he will accept  Defendants' offer, that offer renders Count III moot.  *See, e.g.*, *Gator.com Corp. v. L.L. Bean, Inc*., 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (explaining that the central question when analyzing mootness "is 'whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief'" (citation omitted)).

Count III also fails because Plaintiff lacks a private right of action under § 1107a.  There must be "clear evidence" of "congressional intent to create" such a right.  *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1169 (9th Cir. 2013).  Where the necessary intent is absent, "a cause of action does not exist and courts may not create one."  *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).  Here, neither § 1107a nor the Federal Food, Drug, and Cosmetic Act ("FDCA") provides a waiver of sovereign immunity or a cause of action for Plaintiff, FAC ¶¶ 129-33.  *See, e.g.*, *Crosby v. Austin*, No. 8:21-cv-2730, 2022 WL 603784, at *1-2 (M.D. Fla. Mar. 1, 2022); *Doe ex rel. Doe v. Franklin Square Union Free Sch. Dist*., -- F. Supp. 3d --, 2021 WL 4957893, at *20 (E.D.N.Y. Oct. 26, 2021), *withdrawing appeal*, 2022 WL 1316221 (2d Cir. Mar. 17, 2022); *Bridges v. Hous. Methodist Hosp*., 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021), *appeal filed*, No. 21-2031 (5th Cir. June 14, 2021). Instead, the FDCA reserves exclusive enforcement authority to the United States, with one limited exception for state enforcement.  21 U.S.C. § 337(a); *Guilfoyle v. Beutner*, No. 2:21-cv-05009, 2021 WL 4594780, at *26-27 (C.D. Cal. Sept. 14, 2021).  Nor can Plaintiff overcome this defect by referencing the *ultra vires* doctrine,

particularly as he is asserting an APA claim.  *See, e.g.*, *Las Americas Immigrant Advoc. Ctr. v. Biden*, ---F. Supp. 3d---, 2021 WL 5530948, at *7 (D. Or. Nov. 24, 2021) (nonstatutory review was "inappropriate" because "Plaintiffs are able to, and in fact do, bring their case based on the specific review provisions of the APA").[7]

In any event, Plaintiff's claim fails on the merits. Congress has given the military wide latitude to establish a vaccination program for the welfare of the troops.  *See* 10 U.S.C. §§ 113(b), 7013(b)(9), 8013(b)(9), 9013(b)(9).  To be sure, 10 U.S.C. § 1107a places conditions on that authority: it requires a presidential waiver of a notification requirement if the military seeks to require service members to take products authorized only for "emergency use."  But "[t]he law only requires that [Plaintiff] have been *informed* that he has a choice whether to get the vaccine or not and to be told of what consequences may follow if he decides to not get the vaccine."  Order at 3, ECF No. 9, *Miller v. Austin*, No. 4:22-cv-01739 (S.D. Tex. June 1, 2022), attached hereto as Ex. J.  Plaintiff does not allege that he was not so informed.  Moreover, DoD's directive does not implicate § 1107a because service members are only required to receive "COVID-19 vaccines that receive full licensure . . . in accordance with FDA-approved labeling and guidance[,]" App. 004 (Mem. for Senior Pentagon Leadership), a directive mirrored in implementation guidance from the Navy and Marine Corps, *id.* at 075 (ALNAV 062/21 ¶ 3); *id.* at 079 (MARADMIN 462/21 ¶ 3.b).  FDA approved the Pfizer-BioNTech COVID-19 vaccine under the name Comirnaty for its intended use by people aged 16 years and older.  Ex. B (Pfizer BLA Approval) at 2.  In its contemporaneous reissuance of

---

[7] Plaintiff cannot advance his argument by relying on 21 U.S.C. § 355, 21 U.S.C. § 360bbb-3, or DoDI 6200.02.  *See* FAC ¶ 131.  As an initial matter, none provides a cause of action to Plaintiff.  Further, the approval of a BLA under the Public Health Service Act ("PHSA"), 42 U.S.C. § 262(a)(2)(C), is not governed by the standards for a New Drug Application under the FDCA, *see* 21 U.S.C. § 355.  Similarly, DoDI 6200.02 is inapplicable to the COVID-19 vaccine mandate, given that the vaccine is approved by FDA and is not being administered as part of a clinical investigation.  *See* DoDI 6200.02 at 2, attached hereto as Ex. I.

Pfizer's EUA, FDA determined that "[t]he licensed vaccine has the same formulation as the EUA-authorized vaccine and the products can be used interchangeably to provide the vaccination series without presenting any safety or effectiveness concerns." Ex. C (Pfizer EUA Letter) at 2 n.8; *see* Compl. ¶ 13. DoD's determination to "use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine[,]" Ex. E (Acting Assistant Secretary of Defense Mem.), is thus consistent with § 1107a.

In addition, vaccines produced at facilities listed in Pfizer's BLA and released in accordance with BLA requirements are manufactured in compliance with the BLA; "EUA-labeled lots that had also undergone CBER lot release according to the BLA would be considered BLA-compliant." Ex. D (SBRA) at 27; *see also* HCP Letter,        https://www.cvdvaccine-us.com/16-up-yearsold/resources        (under "Important Lot Information" & "Additional Lot Details"). Plaintiff was offered a dose of the BLA-compliant vaccine months ago. ECF No. 32-1, at 7. Plaintiff, however, declined that offer, *id.* at 5, further undercutting his statutory claim, *see Navy Seal 1 v. Biden*, ---F. Supp. 3d---, 2021 WL 5448970, at *3 (M.D. Fla. Nov. 22, 2021); *see also, e.g., Doe #1–#14 v. Austin*, --- F. Supp. 3d ---, 2021 WL 5816632, at *6 (N.D. Fla. Nov. 12, 2021); *Crosby*, 2022 WL 603784, at *2; *Norris v. Stanley*, 558 F. Supp. 3d 556, 559-60 (W.D. Mich. 2021).

### d.    APA

Plaintiff can "point to no prior case in which an APA-based challenge to an internal military policy survived *Mindes* scrutiny." *Kuang v. DoD*, 778 F. App'x 418, 420 (9th Cir. 2019). While that alone indicates that Plaintiff's APA claim is not reviewable, *see id.*, his argument fails on other grounds as well.

First, Plaintiff has failed to allege the requisite agency action for APA review. The APA expressly limits judicial review to "final agency action," 5 U.S.C. § 704, which is "circumscribed" and "discrete[,]" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004); *see* 5 U.S.C. § 551. Plaintiff here asserts that "[t]he vaccine

mandates, accompanying guidance, and Defendants' actions implementing the Vaccine Mandates are arbitrary, capricious, and an abuse of discretion[.]" FAC ¶ 136. Such "vague and non-specific allegations challenging [Defendants'] overall 'implementation' . . . plainly 'lack the specificity requisite for agency action.'" *Banner Health v. Sebelius*, 797 F. Supp. 2d 97, 110 (D.D.C. 2011) (citation omitted). They also fail basic pleading requirements. *Twombly*, 550 U.S. at 570.

Assuming Plaintiff's APA claim is based on his theory of informed consent, *see* FAC ¶ 137,[8] that is moot and otherwise deficient for the reasons stated above, *supra* at 21-23. It also fails because Plaintiff is not within the zone of interests of 10 U.S.C. § 1107a. "[A] person suing under the APA must satisfy not only Article III's standing requirements, but an additional test—The interest he asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated." *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1166 (9th Cir. 2018) (citation omitted). Here, § 1107a is concerned with the health and safety of service members, and it cannot reasonably be assumed that, in "[t]he particular language of" § 1107a, "Congress intended to protect" outright objection to a vaccine on religious grounds regardless of whether it is FDA approved. *See Air Courier Conf. of Am. v. Am. Postal Workers Union, AFL-CIO*, 498 U.S. 517, 524-25 (1991).

---

[8] Plaintiff may not litigate his religious freedom claims through the APA, as RFRA provides an "adequate remedy" for such a challenge. *See* 5 U.S.C. § 704. Further, the Secretary's August 24, 2021 memorandum readily survives the highly deferential standard of review that would apply in the APA context, *see, e.g.*, *FCC v. Prometheus Radio Proj.*, 141 S. Ct. 1150, 1158 (2021); *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), particularly as the vaccination requirement aligns with the CDC's recommendation, App. 013 (DoDI 6205.02 at 3); App. 120 (Rans Decl. ¶ 20); the Secretary relied on the rise in COVID-19 infection rates due to the Delta variant; he "careful[ly] consult[ed] with medical experts and military leadership"; FDA licensed the vaccine; and the Secretary determined that "mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people[,]" App. 004 (Mem. for Senior Pentagon Leadership). Accordingly, the Secretary's decision is reasonable and consistent with DoD policy, as reflected in the documents submitted by Plaintiff himself. *Cf. Navy SEAL 1*, 2022 WL 1294486, at *6-12; *Thomas Short*, 2022 WL 1203876, at *13; Order, ECF No. 25, at 10; *Mazares v. Dep't of the Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002).

As Plaintiff's objection is a religious one, he is outside the statutory zone of interests.

### 2. Second *Mindes* Factor: Potential Injury

As the Court concluded, "any harms Plaintiff will face are not irreparable or certain to occur." Order, ECF No. 25, at 6; *see id*. at 13-14. Consequently, "[t]he second [*Mindes*] factor weighs against judicial review." *Id.* at 6; *see also, e.g.*, *Payne v. United States*, 88 F. App'x 281, 281 (9th Cir. 2004); *Schlanger*, 586 F.2d at 671.

### 3. Third and Fourth *Mindes* Factors: Interference with Military Discretion and Expertise

Finally, the third and fourth *Mindes* factors weigh decidedly in Defendants' favor. As the Court explained, "[f]orcing the USMC to adjust to the risks of including unvaccinated Marines in its ranks is a substantial interference." Order, ECF No. 25, at 6; *see Thomas Short*, 2022 WL 1203876, at *16 ("The Court emphatically agrees with this analysis and adopts it here."); *accord Navy SEAL 1*, 2022 WL 1294486, at *6; *cf. Kuang*, 778 F. App'x at 421; *Sebra v. Neville*, 801 F.2d 1135, 1142 (9th Cir. 1986). Plaintiff's claims are thus non-reviewable under *Mindes*.

## II. Counts II, III, and IV Otherwise Fail.

Even if the Court were to conclude that Plaintiff's claims were reviewable, it should nonetheless dismiss Counts II, III, and IV of the FAC. Plaintiff's First Amendment claim fails because the Marine Corps' decision satisfies the deferential standard of review that applies. *See supra* at 18-20. Plaintiff's claim under 10 U.S.C. § 1107a should be dismissed because it is moot, Plaintiff lacks a cause of action, and Defendants have satisfied any statutory obligations. *See supra* at 21-23. Plaintiff's APA claim should be dismissed for similar reasons, and because (1) Plaintiff has not identified a discrete agency action, and (2) Plaintiff is not within the zone of interests of § 1107a. *See supra* at 23-25.

## CONCLUSION

The Court should grant Defendants' motion to dismiss.

Dated:  June 17, 2022                                Respectfully submitted,

                                                                    BRIAN M. BOYNTON
                                                                    Principal Deputy Assistant Attorney General

                                                                    ALEXANDER K. HAAS
                                                                    Director, Federal Programs Branch

                                                                    ANTHONY J. COPPOLINO
                                                                    Deputy Director, Federal Programs Branch

                                                                    */s/ Stuart J. Robinson*
                                                                    STUART J. ROBINSON
                                                                    Senior Counsel (CA Bar No. 267183)
                                                                    United States Department of Justice
                                                                    Civil Division, Federal Programs Branch
                                                                    450 Golden Gate Ave., Suite 7-5395
                                                                    San Francisco, CA 94102
                                                                    Telephone: (415) 436-6635
                                                                    Fax: (415) 436-6632
                                                                    Email: stuart.j.robinson@usdoj.gov

                                                                    *Counsel for Official Capacity Defendants*

1  **CERTIFICATE OF SERVICE**

2       I hereby certify that on the 17th day of June 2022, I electronically

3  transmitted the foregoing document to the Clerk of Court using the ECF System

4  for filing.

5

6

7                                           */s/ Stuart J. Robinson*

8                                           STUART J. ROBINSON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28